ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC 
Feb. 27, 1992.
Before POLITZ, Chief Judge, REYNALDO G. GARZA and JONES, Circuit Judges.
PER CURIAM:
A majority of the panel having voted to grant rehearing in part, the opinion of the court in disposing of this appeal is as follows:
Part IV of the panel opinion, found at 948 F.2d 134, 142-44 (5th Cir.1991), is hereby withdrawn and deleted from the opinion. In connection with that determination, the last paragraph of Part III also is deleted. Further, in the first sentence of the second paragraph of the opinion, the word “three” is changed to “two,” and the last sentence of that paragraph is deleted. Part V of the opinion is renumbered to IV. In withdrawing this portion of the panel opinion we emphasize that the bankruptcy court’s opinion on the “new value exception” to the absolute priority rule has been vacated and we express no view whatever on that part of the bankruptcy court’s decision.
Other than these revisions, the original opinion is reinstated and the petition for panel rehearing is DENIED. Further, no member of the panel or judge in active service having requested that the court be polled on rehearing en banc, see Fed. R.App.P. and Local Rule 35, the suggestion for rehearing en banc is DENIED.
EDITH H. JONES, dissenting:
How one should approach issues of a statutory construction arising from the Bankruptcy Code has been clouded, in my view, by Dewsnup v. Timm, — U.S. -, 112 S.Ct. 773, — L.Ed.2d - (1991). Nevertheless, in reaffirming what I wrote about the “new value exception” in Part IV of the original opinion, and therefore in voting against a rehearing, I would hope to stand with Galileo, who, rebuffed by a higher temporal authority, muttered under his breath, “Eppur si muove.” (“And yet it moves.”)
*143 22, 60 S.Ct. 1, 10-11, 84 L.Ed. 110 (1939) (dictum). Second, because the Code did not specifically overrule the prior judicial understanding of the fair and equitable standard, it must have incorporated that standard by including the “new value exception” in § 1129(b)(2)(B). Third, if § 1129(b)(2)(B) does not specifically codify the “new value exception,” it represents only a partial definition of “fair and equitable” that leaves room for one. Fourth, Greystone’s offer of $500,000 satisfies the new value exception.
With due respect to the ingenuity of Greystone’s statutory construction agreement, we feel compelled nevertheless to paraphrase Gertrude Stein: “There is no there there.” It is not obvious, for instance, that the Case “new value exception” is meaningful in the context of Chapter ll’s reorganization provisions, which differ markedly from the prior law. When Case was decided, the unanimous consent of all creditor classes was required in addition to a fair and equitable plan conforming to the absolute priority rule. Case, 308 U.S. at 114 n. 6, 60 S.Ct. at 6, n. 6. The 1978 Bankruptcy Code, however, permits less-than-unanimous acceptance of a creditor class to suffice even if the absolute priority rule is not satisfied and alternatively specifies conditions for cramdown plans. 11 U.S.C. §§ 1129(a), 1129(b)(2). This increased flexibility arguably renders the Case exception unnecessary and is certainly a significant distinction from the statutory background to that decision. In re Outlook/Century Ltd., supra.
Greystone’s efforts to parse the statutory language for evidence of incorporation of the “new value exception” are similarly unpersuasive. Greystone relies on two phrases in § 1129(b)(2). It is contended that by defining the “fair and equitable standard” to “include the following requirements,” the definition is demonstrably incomplete, leaving implicit room for a new value exception. This seems unlikely, because the quoted phrase sets a minimum standard for a fair and equitable plan that may be confirmed over creditor objections. Matter D & F Construction, Inc., 865 F.2d 673, 675 (5th Cir.1989). The “new value exception,” by contrast, dilutes the minimum requirement.
Alternatively, Greystone focuses on the condition in § 1129(b)(2)(B)(ii) that a junior claim or interest may not receive or retain property on account of its interest until more senior parties are fully satisfied. This argument holds that if “old equity” infuses new money into the debtor, it is not retaining its ownership “on account of” its old equity status. This is mere wordplay, because Greystone intends to prevent creditors from acceding to ownership of the property on account of Greystone’s unique status as an old equity contributor to the plan. More specifically, Greystone desired to prevent a competitive auction of the property, at which Phoenix could credit bid, precisely because of Greystone’s old equity status. Greystone cannot read the statutory language in such a self-serving way.
Greystone next contends that if the statute does not express or imply a new value exception, it merely intended to codify preexisting law and is not inconsistent with such law. This position attributes too little weight to the statutory language, which “we are to take ... seriously even when it alters pre-Code practices.” Kham & Nate’s Shoes No. 2 v. First Bank, 908 F.2d 1351 (7th Cir.1990) (Easterbrook, J.), citing Pennsylvania Dept. of Welfare v. Davenport, 495 U.S. 552, 110 S.Ct. 2126, 2130-31, 109 L.Ed.2d 588 (1990). Moreover, as Judge Easterbrook and others have observed, Congress clearly rejected a proposal by the Bankruptcy Commission to modify the absolute priority rule when it enacted the Code. See, e.g., Brudney, The Bankruptcy Commission’s Proposed “Modifications” of the Absolute Priority Rule, 48 Am.Bankr.L.J. 305 (1974). In re Outlook/Century Ltd., supra. From this history one can infer that Congress acted knowledgeably in codifying a strict absolute priority rule. Such history also contradicts the suggestion that the “new value exception” is merely a “logical expansion” of the codified absolute priority rule, In re Greystone III, 102 B.R. at 574, because it was part of the pre-Code “fair and equitable” standard. Further, to the extent *144 that these arguments advocate equitable variations from the absolute priority rule, they conflict with Ahlers’ observation that “whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.” Ahlers, supra, 485 U.S. at 206, 108 S.Ct. at 968-69.
In an amicus brief, a final reason suggested for applying the “new value exception” within the codified absolute priority rule is that the Code does not prohibit a cramdown reorganization plan that sells the debtor to its former equity owners, and the “new value exception” is necessary to rein in that potential force for self-dealing. We disagree with the assumption that the Code permits a nonconsensual plan to “sell” the debtor to its old equity owners. This flies in the face of the creditor control principle embodied in Chapter 11 and accepted by Ahlers:
The Court of Appeals may well have believed that petitioners or other unsecured creditors would be better off if respondents’ reorganization plan was confirmed. But that determination is for the creditors to make in the manner specified by the Code. 11 U.S.C. § 1126(c).
485 U.S. at 206, 108 S.Ct. at 969.
Moreover, permitting the courts, pursuant to a “new value exception,” rather than the creditors, under a strict absolute priority rule, to determine the conditions of former equity owners’ participation in a reorganized debtor introduces an enormously complicating factor in a carefully balanced bargaining structure. The proposed test for the “new value exception” is exceedingly vague — requiring the infusion in (a) money or money’s worth of (b) substantial (c) new value, (d) reasonably equivalent to the extent of old equity’s proposed participation in the reorganized debtor, and (e) necessary to such reorganization. Amicus Brief of Prof. Warren, at 12. If these criteria are essentially factual, then each bankruptcy court can impose its freewheeling view of reorganization policy without fear of appellate reversal. Creditors and the debtor are left to guess, not what each other’s “bottom line” position is for a consensual plan, but rather what the particular court sees as a “bottom line” cash contribution that will permit cramdown of an old equity plan under the “new value exception.” It is dubious to suppose that courts will ordinarily possess superior foresight than the creditors themselves concerning the creditors’ best interests. Here, for instance, Greystone owed Phoenix $3.5 million above the value of its collateral, yet the court allowed it to pay $140,000 on that obligation and retain complete ownership for a half-million dollar capital infusion. Meanwhile, Greystone remains obligated for only about $5.8 million on what was originally an $8.8 million loan. If the bankruptcy courts may implement “new value,” nonconsensual reorganization plans governed by such amorphous standards, one wonders why Congress bothered to frame elaborate ground rules for achieving consensual plans. Negotiations between creditors and the debtor against such a “new value exception” backdrop would be enormously skewed in favor of old equity and would seriously erode the utility of the creditors’ votes.
Neither in the Code’s language, nor in the context of a previous, different reorganization law, nor in legislative history, nor in policy is there room for a “new value exception” to the absolute priority rule now defined by § 1129(b)(2)(B).
Because of this conclusion, it is unnecessary to determine whether the lower courts properly applied a “new value exception” to the absolute priority rule. We note, however, that even though the “standards” for that exception are most difficult to consider effectively on appeal, the bankruptcy court erred in refusing to consider Phoenix’s proposed equity contribution plan along with that of former equity. There is no statutory or policy reason why the court should have arbitrarily rejected a competing bid by Phoenix to infuse equity into the debtor after the exclusivity period lapsed. See 11 U.S.C. § 1121.